JUSTICE COATS,
dissenting.
¶16 I respectfully dissent, not only because I find the majority’s ruling today to be both misguided and mischievous but also because I disagree with the majority’s choice to dodge the more meaningful question actually posed by the order being challenged in this original proceeding. In the face of a discovery order ostensibly protecting assertedly proprietary information by barring the plaintiff from disclosing it to competing insurers, but simultaneously permitting its disclosure to other plaintiffs’ lawyers, who would be unconstrained from doing precisely that, the majority’s discharge of our rule effectively allows to stand the very order it holds should never have issued in the first place. Quite apart from the majority’s failure to resolve the question expressly posed by the trial court’s rationale for limiting its protective order, and as explicitly argued to this court by the amici United Policyholders and Colorado Trial Lawyers Association with the con- *1266 entrence of the plaintiff—that is, whether discovery provided by the civil rules is intended solely for the benefit of opposing parties or rather must remain subject to dissemination to others outside the litigation also seeking information about the practices of the disclosing party—I believe the majority's decision to deprive the insurer of protection against dissemination beyond this litigation, while simultaneously ignoring the tidal court’s actual rationale for doing so, may not turn out to be as deft or cost-free as the majority seems to think. Assuming that it is viewed as more than simply a quick way of disposing of the instant petition, it appears more likely to me that the majority’s rationale for discharging our rule today must have the odd effect of imposing on parties asserting a claim of proprietary information an obligation to ensure that they have proven as much to the satisfaction of a potential reviewing court, notwithstanding the acquiescence of both trial court and opposing party to the issuance of a protective order.
¶17 The order specifically challenged in the petition for relief pursuant to C.A.R. 21 was an order of the district court granting the defendant-insurer’s motion for a protective order concerning proprietary corporate information ordered disclosed to the plaintiff, but only to the extent of barring the plaintiff from further disclosing that proprietary corporate information to the insurer’s competitors. The court’s order simultaneously denied the defendant’s request that the use of its proprietary corporate information be limited to the current litigation, which would have effectively barred the plaintiff from disseminating it to others who would not be similarly constrained from disclosing it to the defendant’s competitors. Although the district court initially denied any protective order at all, on the sole ground that entitlement to such an order was waived as a sanction for earlier discovery violations, upon hearing the insurer’s challenge to the appropriateness of this blanket waiver sanction, it relented and partially granted the insurer’s motion for protection. In doing so, however, the court made clear that its continued unwillingness to further limit the scope of its discovery order resulted not from any failure of the insurer to establish the proprietary nature of its documents, which would of course have been contradictory of its grant of a partial protective order, but instead reflected its accession to the plaintiffs assertion of an entitlement to share the insurer’s proprietary corporate information with “fellow Plaintiffs lawyers” or to use it in possible future litigation of his own.
¶18 The district court did not more specifically determine which of the documents actually contained proprietary corporate information, and given both the nature of its ruling and the fact that the multitudinous documents at issue had already been ordered turned over to the plaintiff as a sanction, little purpose would have been served by doing so. The fact that the disclosed documents, as a group, contained proprietary information was clearly accepted by both the court and the parties as the premise for the ensuing debate over the court’s discretion to limit their disclosure directly to competitors, on the one hand, while permitting them disclosure to plaintiffs’ lawyers in unconnected litigation, on the other. Whether or not the district court would have even - entertained additional evidence on the proprietary nature of this corporate information, there was simply no need for it. By that stage of the discovery process, the district court had made eminently clear that the only issues with which it was concerned were the scope of its “waiver” sanction and, contained within that question, whether disclosure of the insurer’s proprietary information should be limited to use in the current litigation.
¶19 The propriety of an order acknowledging good cause for protecting the insurer’s commercial information from being revealed to its competitors and, at one and the same time, permitting the dissemination of that information to the plaintiffs’ bar generally, for use without limitation in other litigation, was ever the only reason for our interference, at the discovery stage of the current litigation. Unlike the majority, I would make clear that providing for the benefit of other litigants, in unconnected litigation, is not a proper basis for ordering the disclosure of, or denying a protective order for, information otherwise meriting protection according to C.R.C.P. 26(c); nor is it a .proper sanction for discovery violations, as permitted by C.R.C.P. 37. Whether or not the “waiver” of *1267 all objections, as ordered by the district court in this case, might under some circumstance be considered a sanction within the contemplation of Rule 37 for recalcitrance in complying with discovery rules, an order permitting the dissemination of a party’s proprietary corporate information for use'in other, unconnected litigation, either to punish that party or benefit potential future litigants, clearly implicates matters of both policy and process extending far beyond the contemplation of the Rule,
¶20 I therefore take this opportunity to briefly, but emphatically, express my disapproval not only of the result reached by the majority today but also of the grounds upon which it rests its current disposition. Were I to agree with the majority that a procedural default or inadequacy of proof by the defendant actually made it. untenable for us to reach the issue upon which we granted the petition (which I do not), I believe dismissal of the petition as improvidently granted would be the proper course of action. In any event, whatever might be considered an appropriate technique for lower courts, I consider it unworthy of a high court to dispose of matters we have ourselves found sufficiently significant to merit the exercise of our original jurisdiction, on the basis of such a mechanical, “gotcha” rationale.
¶21; I therefore respectfully dissent.
I am authorized to state that-JUSTICE EID joins in this dissent.